UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:08-CV-0776-G |
| AMY L. WEBER, ET AL., | ) | |
| | ) | **ECF** |
| Defendants. | ) | |

# ORDER REGARDING CONDUCT OF TRIAL

## 1. TIME

1.1.   Time is the court's scarcest -- and thus most precious -- resource.  Any trial, no matter how brief, requires a substantial expenditure of that resource, which is therefore unavailable -- at least for the duration of the trial -- to other litigants and other cases.  The trial procedures announced in this order are intended to conserve that resource by obtaining, consistent with fairness and applicable law, the promptest resolution of the dispute from the least possible expenditure of the court's time.

1.2.    To prevent waste of time, if a civil case is settled or if the defendant in a criminal case decides to plead guilty, the parties shall notify the court immediately so that any trial preparation under way can be aborted and that time devoted to other cases.

1.3.    Because the court's time is a public resource, the parties to a dispute who call upon that resource by their inability to resolve the dispute themselves, *i.e.*, by requiring a trial, must be present personally, unless excused in advance by the court for cause shown, from the time the case is called for trial until return of the jury's verdict or announcement of the court's findings.  A party which is not a natural person shall be represented by the presence of a natural person who can, on his/her own authority, eliminate the need for trial by compromising the dispute.

1.4.    The court makes every effort to commence proceedings at the time set. Promptness is expected from all counsel, parties, and witnesses.  After the first day, trial will start at 9:00 a.m. unless the court announces a different time.  Counsel shall have the responsibility to notify the court as promptly as possible of any commitments in any other court on a subsequent trial day.  Trial engagements take precedence over any other business.  If counsel have non-trial matters in other courts, they should arrange in advance to have them continued or to have another attorney handle them.

1.5.    Unless counsel and the parties are notified otherwise by the court, the trial day will be divided as follows:  an early morning session from 9:00 a.m. to 10:20 a.m.; a mid-morning recess from 10:20 a.m. to 10:40 a.m.; and a late morning session from 10:40 a.m. to 12:00 noon; a midday recess from 12:00 noon to 1:30 p.m.; an early afternoon session from 1:30 p.m. to 3:10 p.m.; a midafternoon recess from 3:10 p.m. to 3:30 p.m.; and a late afternoon session from 3:30 p.m. to 4:45 p.m.  The jury will ordinarily be excused at 4:45 p.m., after which the court and counsel can discuss housekeeping and legal matters that must be resolved outside the presence of the jury.

1.6.    In a jury trial, the jurors' time is also a valuable public resource:  the government spends about $50 for each day or part thereof a juror spends at the courthouse.  Moreover, surveys show that a major reason for public resistance to jury service is the prevalent feeling that jurors' time is not valued and utilized efficiently. Accordingly, the court is strongly committed to (a) starting trial promptly each day as soon as all jurors have arrived, (b) spending all of each trial day (except for regularly scheduled recesses) in the courtroom hearing evidence, and (c) severely limiting bench conferences or unscheduled recesses that counsel may request for the purpose of presenting legal or evidentiary questions.  To the maximum extent practicable, such issues will be resolved before trial begins, on the papers, during a regularly scheduled recess from trial, or at the close of the trial day after the jury has been excused.

## 2.  DECORUM

2.1.    A trial should be a quiet, dignified search for the truth.  All proceedings must therefore be conducted with the solemnity necessary to impress their importance and seriousness on all participants (parties, counsel, witnesses, and jurors).

2.2.    In keeping with this solemnity, the court insists on formality in the courtroom.  The following rules, which are illustrative of what is expected, are not necessarily exhaustive.

2.3.    Attire for all participants seated before the rail shall be neat and dignified, of a type that would be appropriate for a wedding, funeral, or other solemn occasion.

2.4.    Counsel shall stand when addressing the court for any purpose, including the making of objections.  In jury cases, counsel and their clients will rise when the jury enters or leaves the courtroom.

2.5.    Counsel must stand at the lectern when questioning witnesses.  He/she will not pace about the courtroom but remain at the lectern unless the court gives permission to approach the witness, the diagram, the bench, or the like.  If permission is granted, counsel will return to the lectern when the purpose for which such permission was granted has been accomplished.

2.6.    While court is in session, all remarks must be addressed to the court; counsel will not address the clerk, the reporter, the law clerk, or opposing counsel.

2.7.    While court is in session, counsel will not, unless the court grants permission in advance, leave counsel table to confer with investigators, paralegals, secretaries, assistants, or witnesses seated behind the rail.

2.8.    While another counsel has the floor, counsel will not distract the court or jury by audibly conversing with the client or co-counsel, ostentatiously passing notes, noisily rummaging through papers, or engaging in other conspicuous conduct.

2.9.    Counsel will not -- by facial expression, nodding of the head, or other conduct -- exhibit any opinion, favorable or unfavorable, concerning testimony being given by a witness.  Counsel shall admonish their clients and witnesses not to engage in such conduct.

2.10.   Co-counsel, opposing counsel, clients, and witnesses will be referred to by their surnames, such as Mr. A or Ms. B, and not by first names or nicknames.

2.11.   Food or beverages should not be brought into the courtroom.  Water is available at counsel tables.

### 3.  OPENING STATEMENTS - CLOSING ARGUMENTS

3.1.    The court does not customarily impose time limits on opening statement because it believes that counsel are -- at that stage of the case -- in a better position than the court to assess what the factfinder needs to know.  In the court's experience,

however, jurors have been known to penalize -- through their verdict -- counsel who abuse this license.

3.2.    By contrast, the court does impose time limits for closing argument because, by that stage of the case, it has a sense of the amount of time needed.

3.3.    Opening statements and closing argument (in both jury and non-jury cases) will be conducted only from the lectern.  Counsel may move from the lectern only with the permission of the court.

3.4.    In multi-defendant criminal trials, the court will recognize defense counsel for opening statement and closing argument in the order in which the defendants are named in the indictment.  The court may vary this order with the agreement of all defendants.

3.5.    In jury cases, counsel shall not discuss the law or argue the case during opening statement.  Opening statement will be limited to a narrative of what counsel expects the evidence to show.

3.6.    The court is reluctant to grant motions *in limine* that would prohibit counsel from referring to particular evidence in opening statement.  If counsel is aware that such evidence is controversial and possibly subject to exclusion, he/she makes such a reference at his/her peril if the evidence is later excluded.

3.7.    In final argument of jury cases, counsel shall not appeal to any juror to put himself/herself in the position of a party.

- 6 -

3.8.    Counsel shall not assert his/her personal opinion as to the credibility of a witness, the liability of a civil litigant, or the guilt or innocence of an accused. Similarly, counsel will not assert personal knowledge of a fact in issue or a fact not in evidence.

## 4.   EXAMINATION OF WITNESSES - OBJECTIONS

4.1.    All witnesses will be treated with courtesy and respect during questioning.  Counsel will not become familiar with witnesses.  All witnesses (except children) should be addressed by their surnames, such as Mr. A, Sergeant B, or Doctor C.

4.2.    If counsel intends to question a witness about a group of documents, he/she should avoid delay by having a complete set of the documents organized in order on the witness stand (preferably tabbed in a loose leaf notebook) when the examination begins.

4.3.    The court will allow two rounds of questioning per side:  direct examination, cross examination, redirect examination, and recross examination.  If counsel asserts a right to more questioning than this, he/she should be prepared to cite authorities to the court.

4.4.    Counsel shall not use objections for the purpose of (a) making a speech, (b) recapitulating testimony, or (c) attempting to guide the witness.  When objecting, counsel will state that there is an objection and the legal ground therefor.  For

example, "objection - hearsay."  Permission must be obtained from the court before counsel will be allowed to argue an objection.

4.5.    In multi-defendant criminal trials, the court will deem an objection made by counsel for one defendant to apply to all defendants unless another defendant affirmatively disassociates himself/herself from the objection.

4.6.    Also in multi-defendant criminal trials, the court will recognize defense counsel for cross-examination of government witnesses in the order in which the defendants are named in the indictment.  The court may vary this order with the agreement of the defendants.

4.7.    Motions (*e.g.*, a motion for a mistrial) should not be made in the presence of the jury.  If it is necessary to make a motion while the jury is in the courtroom, counsel will seek permission to approach the bench so that the motion can be made out of the hearing of the jury.

4.8.    The jury is instructed in every case not to permit sympathy, passion or prejudice to enter into their deliberations.  Accordingly, counsel will avoid raising, in the presence of the jury, sympathy issues such as whether his/her client or a witness has children, attends church, has health problems, has suffered personal tragedies, *etc.*, unless such information is clearly relevant to an issue at trial.  If a subject is of questionable relevance, counsel shall seek advance permission from the court before mentioning the matter in the presence of the jury.

4.9.    Where a party has multiple counsel, all cross-examination of a given witness and all objections during that witness's testimony will be made by one -- and only one -- of those counsel.

4.10.   If a witness is on the stand when a recess occurs, counsel for the party calling that witness will have him/her back on the stand ready to proceed when the trial resumes.

4.11.   Counsel will be prepared to present evidence until at least 4:45 p.m. each day unless otherwise notified by the court.  If counsel runs out of witnesses with the result that more than a brief delay ensues, the court may deem the party then presenting evidence to have rested.

4.12.   The court will attempt to cooperate with witnesses who have scheduling problems (*e.g.*, doctors and other professionals) and will ordinarily accommodate them by permitting them to be put on the stand out of sequence.  Counsel should anticipate such a possibility and discuss it with opposing counsel.  If there is objection, counsel should confer with the court in advance.

4.13.   Sidebar conferences will be kept to a minimum.  This court agrees with Standard 5.9 of the Standards suggested by the American Bar Association Advisory Committee on the Judge's Function (1972):

> The trial judge should be alert to the distracting effect on
> the jury during the taking of evidence of frequent bench
> conferences between counsel and the judge out of the
> hearing of the jury, and should postpone the requested

conferences to the next recess except when an immediate
conference appears necessary to avoid prejudice.

## 5.  EXHIBITS

5.1.    Each party shall provide the court and all opposing parties with a set of
all exhibits, charts, schedules, summaries and diagrams and other similar
documentary materials to be used at the trial, together with a complete list of all such
exhibits.  Voluminous exhibits should be reduced by elimination of irrelevant portions
or by the use of summaries (F.R. Evid. 1006).

5.2.    The court favors the use of non-argumentative pedagogical devices (*e.g.*,
charts, summaries, graphs, photographic enlargements, maps, *etc.*) in all cases and,
except in unusual circumstances, will freely permit their use in opening statement and
closing argument.  If an opposing party has an objection to a particular pedagogical
device, that objection must be raised with the court and opposing counsel before the
objectionable exhibit is displayed to the jury.

5.3.    The court does not, however, favor the use of pedagogical devices (such
as a summary, table, graph, *etc.*) created in the courtroom by counsel or a witness
while the witness is on the stand, usually by counsel or the witness summarizing
points alleged to be salient on a large notepad in front of the jury.  If  counsel wishes
to  utilize this technique, the summary should be prepared before the session of court

at which it is to be used and shown to opposing counsel before it is displayed to the jury.

5.4.    Exhibits which have not been provided as required by the court's scheduling order in civil cases or the court's pretrial order in criminal cases will not be received at trial absent compelling circumstances and just cause.  Parties attempting to utilize unnoticed exhibits must be prepared to justify their failure to provide the exhibits at an earlier date.  The tactic of "trial by ambush" will not be condoned.

5.5.    In advance of each trial session, counsel for the party conducting direct examination at that session should show opposing counsel the exhibits he/she intends to introduce at that session.

5.6.    All exhibits must be marked before the trial session at which they are to be introduced.  No trial time will be used for this purpose.  Marking labels are available from the clerk's office.

5.7.    At the beginning of trial, counsel will provide to the court reporter a copy of his/her current witness and exhibit lists.

5.8.    Throughout the trial, counsel for each party should maintain a list of exhibits with an up-to-date tabulation of which exhibits for that party have then been received in evidence.

5.9.    Whenever, in counsel's opinion, a particular exhibit is admissible, it should be moved into evidence.  The practice of holding all exhibits until the end of a

session or the end of a party's case and then moving them all into evidence at that time is not favored.

5.10.   To the extent that the parties have agreed upon the admission of exhibits or the foundation requirements for certain exhibits, all of such exhibits should be moved into evidence as a group at the commencement of trial.

5.11.   As much as possible, counsel will refer to an exhibit by its exhibit number.   Counsel will instruct their witnesses to do the same.

5.12.   The court does not favor taking time to pass an exhibit among the jury for viewing when it is admitted.   This procedure should be used sparingly and then reserved only for truly significant exhibits.   Moreover, when this procedure is permitted by the court, counsel should have a copy of the exhibit (if it is capable of reproduction) for each juror to avoid the time-consuming task of passing the exhibit from juror to juror.

5.13.   Each party's counsel is responsible for the safekeeping and integrity of any exhibits admitted, or to be offered, by that party.   This responsibility continues until the end of trial, at which time the court will make some further order.

5.14.   Counsel wishing to use an easel to display exhibits should discuss the matter with the court reporter.   If the court's permission is needed, the reporter will so advise counsel.

5.15   The courtroom is now equipped with computer monitors at the bench, counsel table, the jury box, and the witness chair.  These monitors permit the display of an exhibit at all those locations simultaneously, together with the possibility of highlighting portions of the exhibit.  Counsel contemplating the use of such equipment at trial should schedule training on the use of such equipment for themselves and/or their assistants who will be operating it at least two weeks prior to the trial setting.  Training is available on request from deputy district clerk **Amanda Miller, 214/753-2231**.  Each training session lasts between thirty minutes and an hour.

## 6.   STIPULATIONS

6.1.   In jury cases, counsel shall not, while the jury is present, offer to stipulate unless, on the basis of conference with opposing counsel, there is reason to believe that the stipulation will be acceptable.

6.2.   In criminal cases, because any stipulation of fact will require the defendant's personal concurrence, a proposed stipulation must be explained to the defendant in advance.

## 7.   JURY INSTRUCTIONS AND AIDS TO JURY DELIBERATION

7.1.   All requested instructions are expected to be filed with the court on or before the date specified in the applicable scheduling order or pretrial order, except for instructions on matters that were not reasonably foreseeable on that date.

7.2.     Instructions shall be brief, clear, written in plain English, free of argument, and shall be organized in a logical fashion so as to aid jury comprehension. Standard or form instructions, if used, must be revised to address the particular facts and issues of the case.  The submitted instructions should show the number of the instruction, the party submitting it, and any citations in support of the instruction.

7.3.     In cases where the use of technical terms is anticipated, a glossary defining such terms should be stipulated to and submitted prior to the commencement of trial.

7.4.     Each juror will be provided a copy of the instructions as they are read by the court and will be permitted to use that copy throughout jury deliberations.

7.5.     The court recognizes that there are advantages and disadvantages to allowing the jury to take notes during the trial as an aid their recollection during deliberations.  Therefore, it will decide before trial, on a case by case basis, whether to permit such notes.  If counsel are in agreement about the matter, the court will generally concur with counsel's view.  If notes are permitted, the court will instruct the jury on the limits of their use.

7.6.     All exhibits admitted in evidence will go to the jury room.  To be sure that documents or tangible things referred to but not admitted during trial are not sent to the jury room by mistake, all counsel will confer with each other and the court

reporter after the evidence is closed to obtain agreement on what was admitted.  If agreement is not possible, the court will resolve any disagreements.

7.7.    Pedagogical devices may or  may not go to the jury room.  The court will make a decision on this matter on a case by case or exhibit by exhibit basis, after considering the views of counsel.

## 8.  MOTIONS *IN LIMINE*

8.1.    Motions *in limine* must be brought at the earliest practicable time. When motions *in limine* are raised for the first time during trial, counsel for the moving party will be prepared to provide the court a satisfactory explanation as to why the issue was not raised and briefed previously.

## 9.  ADVANCE NOTICE OF DIFFICULT QUESTIONS

9.1.    If there is any reason to anticipate that any question of law or evidence is difficult or will require argument, counsel should so notify the court before trial or, in any event, as promptly as possible.

9.2.    If any question is truly difficult, the quality of the court's decision will depend, at least in part, on the briefing done by the parties and the time the court has to review the pertinent authorities and to reflect on their applicability to the case on trial.  Accordingly, trial briefs on difficult issues are of great value to the court, and that value is proportional to the time the court has to consider them and the authorities cited in them.

## 10.  CONCLUSION

10.1.   There will be better trials and fewer embarrassments given scrupulous observance of the Texas State Bar Rules of Professional Conduct (excerpts of which are attached as Appendix A), The Ideal Trial (attached as Appendix B), and these instructions.

10.2.   Counsel in civil trials should also review the provisions of this court's Civil Justice Reform Act plan; the *en banc* decision of this court in *Dondi Properties Corporation v. Commerce Savings and Loan Association*, 121 F.R.D. 284, 287-89, 292-96 (N.D. Tex. 1988) (standards of litigation conduct); FED. R. CIV. P. 11, 16(f), and 37; 28 U.S.C. § 1927; and Local Civil Rules 16.3, 16.4, 26.2, 47.1, 51.1, 52.1, 83.1, 83.4, 83.7, 83.8, 83.9, 83.10, 83.12, 83.13, 83.15, 83.16, 83.17, and 83.18.

10.3.   Counsel in criminal trials should also review FED. R. CRIM. P. 16(d)(2) and Local Criminal Rules 16.1, 23.1, 24.1, 30.1, 32.1, 53.1, 53.2, 53.3, 57.3, 57.4, 57.7, 57.8, 57.9, 57.10, 57.12, 57.13, 57.15, and 58.1.

**SO ORDERED**.

February 20, 2009.

_A. Joe Fish_____

**A. JOE FISH**
**Senior United States District Judge**

# APPENDIX A

## EXCERPTS FROM THE TEXAS STATE BAR RULES OF PROFESSIONAL CONDUCT

**3.01.** **Meritorious Claims and Contentions**  A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous.

**3.02.** **Minimizing the Burdens and Delays of Litigation**  In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter.

**3.03.** **Candor Toward the Tribunal**

(a)     A lawyer shall not knowingly:

    (1)     make a false statement of material fact or law to a tribunal;

    (2)     fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act;

    (3)     in an *ex parte* proceeding, fail to disclose to the tribunal an unprivileged fact which the lawyer reasonably believes should be known by that entity for it to make an informed decision;

    (4)     fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

    (5)     offer or use evidence that the lawyer knows to be false.

(b)     If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall make a good faith effort to persuade the client to authorize the lawyer to correct or withdraw the false evidence.  If such efforts are unsuccessful, the lawyer shall take reasonable remedial measures, including disclosure of the true facts.

(c)     The duties stated in paragraphs (a) and (b) continue until remedial legal measures are no longer reasonably possible.

**3.04.  Fairness in Adjudicatory Proceedings**  A lawyer shall not:

(a)     unlawfully obstruct another party's access to evidence; in anticipation of a dispute unlawfully alter, destroy or conceal a document or other material that a competent lawyer would believe has potential or actual evidentiary value; or counsel or assist another person to do any such act.

(b)     falsify evidence, counsel or assist a witness to testify falsely, or pay, offer to pay, or acquiesce in the offer or payment of compensation to a witness or other entity contingent upon the content of the testimony of the witness or the outcome of the case.  But a lawyer may advance, guarantee, or acquiesce in the payment of:

    (1)     expenses reasonably incurred by a witness in attending or testifying;

    (2)     reasonable compensation to a witness for his loss of time in attending or testifying;

    (3)     a reasonable fee for the professional services of an expert witness.

(c)     except as stated in paragraph (d), in representing a client before a tribunal:

    (1)     habitually violate an established rule of procedure or of evidence;

- 18 -

    (2)    state or allude to any matter that the lawyer does not reasonably believe is relevant to such proceeding or that will not be supported by admissible evidence, or assert personal knowledge of facts in issue except when testifying as a witness;

    (3)    state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused, except that a lawyer may argue on his analysis of the evidence and other permissible considerations for any position or conclusion with respect to the matters stated herein;

    (4)    ask any question intended to degrade a witness or other person except where the lawyer reasonably believes that the question will lead to relevant and admissible evidence; or

    (5)    engage in conduct intended to disrupt the proceedings.

(d)    knowingly disobey, or advise the client to disobey, an obligation under the standing rules of or a ruling by a tribunal except for an open refusal based either on an assertion that no valid obligation exists or on the client's willingness to accept any sanctions arising from such disobedience.

(e)    request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

    (1)    the person is a relative or an employee or other agent of a client; and

    (2)    the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

**3.05.  Maintaining Impartiality of Tribunal**  A lawyer shall not:

(a)    seek to influence a tribunal concerning a pending matter by means prohibited by law or applicable rules of practice or procedure;

(b)    except as otherwise permitted by law and not prohibited by applicable rules of practice or procedure, communicate or cause another to communicate *ex parte* with a tribunal for the purpose of influencing that entity or person concerning a pending matter other than:

    (1)    in the course of official proceedings in the cause;

    (2)    in writing if he promptly delivers a copy of the writing to opposing counsel or the adverse party if he is not represented by a lawyer;

    (3)    orally upon adequate notice to opposing counsel or to the adverse party if he is not represented by a lawyer.

(c)    For purposes of this rule:

    (1)    "Matter" has the meanings ascribed by it in Rule 1.10(f) of these Rules;

    (2)    A matter is "pending" before a particular tribunal either when that entity has been selected to determine the matter or when it is reasonably foreseeable that that entity will be so selected.

**3.06.  Maintaining Integrity of Jury System**

(a)     A lawyer shall not:

     (1)     conduct or cause another, by financial support or otherwise, to conduct a vexatious or harassing investigation of a venireman or juror; or

     (2)     seek to influence a venireman or juror concerning the merits of a pending matter by means prohibited by law or applicable rules of practice or procedure.

(b)     Prior to discharge of the jury from further consideration of a matter, a lawyer connected therewith shall not communicate with or cause another to communicate with anyone he knows to be a member of the venire from which the jury will be selected or any juror or alternate juror, except in the course of official proceedings.

(c)     During the trial of a case, a lawyer not connected therewith shall not communicate with or cause another to communicate with a juror or alternate juror concerning the matter.

(d)     After discharge of the jury from further consideration of a matter with which the lawyer was connected, the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service.

(e)     All restrictions imposed by this Rule upon a lawyer also apply to communications with or investigations of members of a family of a venireman or a juror.

(f)     A lawyer shall reveal promptly to the court improper conduct by a venireman or a juror, or by another toward a venireman or a juror or a member of his family, of which the lawyer has knowledge.

(g)    As used in this Rule, the terms "matter" and "pending" have the meanings specified in Rule 3.05(c).

## 3.07.  Trial Publicity

(a)    In the  course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding.  A lawyer shall not counsel or assist another person to make such a statement.

(b)    A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:

    (1)    the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;

    (2)    in a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;

    (3)    the performance or results of any examination or test or the refusal of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

- 22 -

(4)    any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration; or

(5)    information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial.

(c)    Notwithstanding paragraphs (a) and (b)(1)-(5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:

(1)    the general nature of the claim or defense;

(2)    the information contained in a public record;

(3)    that an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim or defense involved and, except when prohibited by law, the identity of the persons involved;

(4)    the scheduling or result of any step in litigation;

(5)    a request for assistance in obtaining evidence and information necessary thereto;

(6)    a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(7)    in a criminal case:

- 23 -

(i)      the identity, residence, occupation and family status of the accused;

(ii)      if the accused has not been apprehended, information necessary to aid in apprehension of that person;

(iii)      the fact, time and place of arrest; and

(iv)      the identity of investigating and arresting officers or agencies and the length of the investigation.

## 3.08.  Lawyer as Witness

(a)      A lawyer shall not accept or continue employment in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1)      the testimony relates to an uncontested issue;

(2)      the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3)      the testimony relates to the nature and value of legal services rendered in the case;

(4)      the lawyer is a party to the action and is appearing *pro se*; or

(5)      the lawyer has promptly notified opposing counsel that the lawyer  expects to testify in the matter and disqualification of the lawyer

would work substantial hardship on the
client.

(b)      A lawyer shall not continue as an advocate in a pending
adjudicatory proceeding if the lawyer believes that the
lawyer will be compelled to furnish testimony that will be
substantially adverse to the lawyer's client, unless the client
consents after full disclosure.

(c)      Without the client's informed consent, a lawyer may not
act as advocate in an adjudicatory proceeding in which
another lawyer in the lawyer's firm is prohibited by
paragraphs (a) or (b) from serving as advocate.  If the
lawyer to be called as a witness could not also serve as an
advocate under this Rule, that lawyer shall not take an
active role before the tribunal in the presentation of the
matter.

**3.09.  Special Responsibilities of a Prosecutor**  The prosecutor in a criminal
case shall:

(a)      refrain from prosecuting or threatening to prosecute a
charge that the prosecutor knows is not supported by
probable cause;

(b)      refrain from conducting or assisting in a custodial
interrogation of an accused unless the prosecutor has made
reasonable efforts to be assured that the accused has been
advised of any right to, and the procedure for obtaining,
counsel and has been given reasonable opportunity to
obtain counsel;

(c)      not initiate or encourage efforts to obtain from an
unrepresented accused a waiver of important pre-trial, trial
or post-trial rights;

(d)      make timely disclosure to the defense of all evidence or
information known to the prosecutor that tends to negate
the guilt of the accused or mitigates the offense, and, in
connection with sentencing, disclose to the defense and to

the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal; and

(e)     exercise reasonable care to prevent persons employed or controlled by the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.07.

# APPENDIX B

## <u>THE IDEAL TRIAL</u>

The ideal trial consists of:

1.  Opening statements which are informative without being argumentative;

2.  Direct examination that is concentrated and sharply focused on the controverted issues, with all uncontested facts quickly introduced through the court's reading of a comprehensive stipulation of all the uncontested facts prior to the first witness being called;

3.  A minimum number of exhibits with not one second lost in marking or offering, all exhibits having been made available and ruled upon previously and contained in exhibit books;

4.  Exhibit books for all, including the judge and, if feasible, each juror;

5.  Cross-examination sharply focused;

6.  No evidence issues remaining to be argued because of pretrial *in limine* rulings;

7.  Few, if any, sidebar conferences;

8.  No interruptions for offers of proof;

9.  A minimum number of objections with little or no argument;

10. In jury cases, an informed jury by reason of:

    a.  use in opening statements by counsel and during the taking of evidence of non-argumentative charts, graphs, diagrams and summaries,

- 27 -

b.     the stipulation of the uncontested facts,

c.     an opening partial charge by the court including an identification of the issues to be decided,

d.     an orderly presentation of the evidence, and

e.     a meaningful charge to the jury at the conclusion of the case; and, finally,

11.    In bench trials, oral findings of fact, conclusions of law and a brief opinion at the conclusion of the trial, supplemented if appropriate by a written opinion.

# APPENDIX C

## CONDUCT OF THE PROSECUTOR

Quotations from *Berger v. United States*, 295 U.S. 78, 84, 88 (1935).

"That the United States prosecuting attorney overstepped the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense is clearly shown on the record.  He was guilty of misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and, in general, of conducting himself in a thoroughly indecorous and improper manner."

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.  As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.  He may prosecute with earnestness and vigor -- indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."