UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARY KAY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:08-CV-0776-G |
| AMY L. WEBER, ET AL., ) | |
| ) | **ECF** |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, Amy L. Weber, Scott J. Weber, and Touch of Pink Cosmetics ("the defendants" or "the Webers") for judgment as a matter of law, or, in the alternative, motion for a new trial. For the reasons discussed below, the motion is denied.

I. BACKGROUND

The court has laid out the facts of this case in several previous opinions. The following is an excerpt of the facts as discussed in the court's memorandum opinion and order on the defendants' motion for summary judgment.

The plaintiff, Mary Kay, Inc. ("Mary Kay"), is a manufacturer and wholesale distributor of cosmetics, toiletries, and skin care products. Defendants' Motion for Summary Judgment and Brief in Support ("Motion for Summary Judgment") at 2. On January 27, 2000, Amy Weber, one of the defendants, became an Independent Beauty Consultant ("IBC") for Mary Kay. *Id.* An IBC is an independent sales representative who sells Mary Kay products to consumers at whatever price she chooses. *Id.* In September of 2004, Amy Weber placed the last order that qualified her as an IBC.

Although she was no longer purchasing new Mary Kay products, Amy still had a large inventory of products she had been unable to sell as an active IBC. To dispose of her "leftovers," the Webers began selling th e products via eBay, Inc. ("eBay") in early 2005. *Id.* After the couple sold all their inventory, they purchased more Mary Kay products through eBay at a low price, and later re-sold it at a higher price. As business grew, the Webers began to receive inquiries from individuals who wished to sell them Mary Kay products. *Id.* The Webers decided to set up an eBay store called "marykay1stop" to sell all the Mary Kay products they were amassing. *Id.* at 3.

On approximately June 16, 2005, Mary Kay received an e-mail informing it of the presence of marykay1stop. *Id.* As a result, Mary Kay sent Amy Weber a letter which said that by offering Mary Kay products on eBay, she was in violation of her IBC agreement. *Id.* After receiving no response, Mary Kay sent a second letter on

July 29, 2005. *Id.* Again, Mary Kay received no response. On August 19, 2005, Mary Kay terminated the IBC agreement between Amy Weber and Mary Kay. *Id.* On November 3, 2005, Mary Kay contacted eBay and complained of the Webers' use of the Mary Kay name in marykay1stop. *Id.* Mary Kay sent a letter to Scott Weber demanding that he stop using Mary Kay's name in the marykay1stop store. *Id.* at 3-4. In response to this letter, Scott Weber contacted Nancy Pike ("Pike"), a paralegal in the Mary Kay legal department. *Id.* at 4. The Webers claim Pike told Scott that he could continue running the online store so long as he changed the name of the store so as to not include Mary Kay trademarks and removed all photographs copyrighted by Mary Kay. *Id.*

As a result of the conversation with Pike, the Webers changed the name of the store to Touch of Pink and created touchofpinkcosmetics.com, independent of the eBay store. *Id.* The couple also removed all copyrighted Mary Kay images from their websites. *Id.* By doing so, the Webers complied with all of Mary Kay's requests. *Id.* Today, the website touchofpinkcosmetics.com, and the Touch of Pink eBay store continue to sell Mary Kay products. The websites use the Mary Kay name. All the products sold by the defendants were purchased from current or former Mary Kay IBCs. The defendants do not alter the products they sell in any way. *Id.*

The court granted summary judgment in favor of the defendants on several of Mary Kay's claims. The court denied summary judgment, however, on the claims of

(1) unfair competition under the Lanham Act, (2) passing off under the Lanham Act, (3) trademark infringement under the Lanham Act, (4) unfair competition under Texas common law, and (5) trademark infringement under Texas common law. These five claims were submitted to a jury. The jury found in favor of Mary Kay on all claims. The jury also found that the Webers had not demonstrated that they were protected from liability by the affirmative defenses of laches, the first sale doctrine, and the fair use doctrine.

## II. ANALYSIS

The defendants now renew their motion for judgment pursuant to Federal Rule of Civil Procedure 50 ("Rule 50"), arguing that Mary Kay did not present sufficient evidence at trial to support the jury's findings. Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial ("Motion") at 4. Specifically, the Webers argue that they are entitled to judgment as a matter of law on the affirmative defenses of the first sale doctrine and the fair use doctrine. *Id.* at 4-5. They also contend that there was insufficient evidence presented at trial to support the jury's finding that the defendants had acted "willfully." *Id.* at 5. Further, the plaintiffs assert that the jury's award of an accounting was not supported by the evidence. *Id.* at 12. Finally, the defendants argue that Mary Kay did not present sufficient evidence to demonstrate that the Webers' eBay store had violated the trademark laws at issue.

A. The Rule 50 Standard

A motion for judgment as a matter of law "challenges the legal sufficiency of the evidence to support the verdict." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006) (citing *Ford v. Cimarron Insurance Company*, 230 F.3d 828, 830 (5th Cir. 2000)).

> Judgment as a matter of law is appropriate with respect to an issue if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on that issue. This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict. In considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, as those are jury functions. In reviewing the record as a whole, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Brennan's Inc. v. Dickie Brennan & Company, Inc.*, 376 F.3d 356, 362 (5th Cir. 2004) (citations, brackets, and quotation marks omitted). The "standard of review with respect to a jury verdict is especially deferential." *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006) (quoting *Brown v. Bryan County, OK*, 219 F.3d 450, 456 (5th Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001)). "A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the

successful party, to support the verdict." *American Home Assurance Company v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004) (citing *Liberty Mutual Insurance Company v. Falgoust*, 386 F.2d 248, 253 (5th Cir. 1967)).

### B. There Was Sufficient Evidence to Support the Jury's Finding on The First Sale Doctrine

The Webers argue, as they did in their motion for summary judgment, that "the Webers[] were simply re-selling Mary Kay items that they lawfully purchased" and that they are therefore protected by the first sale doctrine. Motion at 11. According to the first sale doctrine, "As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner . . . . Thus, a distributor who resells trademarked goods without change is not liable for trademark infringement." *Polymer Technology Corporation v. Mimran*, 975 F.2d 58, 61-62 (2nd Cir. 1992). The Fifth Circuit follows this rule. In *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 590 (5th Cir. 1993), the court adopted the doctrine, stating that "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." The first sale doctrine, however, does not protect every individual who resells trademarked goods. The doctrine does not protect those who sell trademarked goods that are "materially" different from those sold by the trademark owner. *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Company*, 112 F.3d 1296, 1302-03 (5th Cir. 1997). Nor does it protect those who

give off the false impression that they are affiliated with or sponsored by the trademark owner. *Scott Fetzer Company v. House of Vacuums Inc.*, 381 F.3d 477, 484 (5th Cir. 2004) (holding that independent dealers "may use a mark to advertise truthfully that they sell or repair certain branded products so long as the advertisement does not suggest affiliation or endorsement by the mark holder").

The defendants argue that the products they sell are not materially different from the products Mary Kay sells through its IBCs. Motion at 11. In support of this argument, the defendants point to the fact that, although the defendants may sell expired Mary Kay products, authorized Mary Kay IBCs are free to sell expired products as well. Motion at 11. In *Warner-Lambert Company v. Northside Development Corporation*, 86 F.3d 3 (2nd Cir. 1996), the Second Circuit considered whether a distributor of HALLS cough drops was liable for trademark infringement because it had distributed expired cough drops. *Warner-Lambert*, 86 F.3d at 5-6. There, just as here, all parties conceded that the distributor was selling an expired product. The defendant, however, pointed out that the plaintiff itself sold some stale products. Since both the plaintiff and defendant were selling stale cough drops, the defendant argued that its products could not be materially different from the plaintiff's. *Id.* at 6. The court, however, disagreed. It reasoned that the mark holder was not required to use the most "stringent measures of insuring freshness" that were available. *Id.* Instead, to be entitled to relief, the mark holder had to show only that "(i) it has

established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." *Id.* This court finds the reasoning in *Warner-Lambert* persuasive and concludes that so long as Mary Kay presented evidence that it had established legitimate, substantial, and nonpretextual quality control procedures, the first sale doctrine does not protect the defendants.

The evidence presented at trial provided a legally sufficient basis for a reasonable jury to find for Mary Kay on this issue. Renee Wickham ("Wickham"), Vice President of Product Quality at Mary Kay, testified that Mary Kay destroys any inventory it possesses that is within six months of its shelf life. Trial Transcript ("Tr.") at 328:2-4. Wickham also testified that Mary Kay makes efforts to educate its IBCs about the expiration dates and Mary Kay's preferred "first in first out" policy to prevent IBCs from selling products past their shelf-life to end consumers. *Id.* at 329-331. Finally, Wickham also testified that Mary Kay's satisfaction guarantee policy allows a consumer who buys an expired product from an IBC to return that product for a newer one. *Id.* at 331:6-18. This evidence is sufficient to allow a reasonable jury to conclude that Mary Kay takes legitimate, substantial, and nonpretextual steps to insure that its customers do not receive expired Mary Kay products. In addition, Mary Kay presented evidence that the Webers had a large advertising campaign designed to attract attention to their website. Tr. at 502-513.

The jury could have reasonably concluded from this evidence that the Webers were selling a sufficient number of expired products to be able to diminish the value of the Mary Kay mark.  Thus, it was not unreasonable for the jury to conclude that the Webers were selling products that "materially differed" from those sold by Mary Kay, and to reject the application of the first sale doctrine.  The defendant's renewed motion for judgment as a matter of law on this issue is denied.

### C.  There Was Sufficient Evidence to Support the Jury's Finding on The Fair Use Doctrine

Next, the defendants argue that there was insufficient evidence to support the jury's finding that the fair use doctrine does not protect the defendants.  According to the Fifth Circuit, "[t]he nominative fair use doctrine provides that 'one who has lawfully copied another's product can tell the public what he has copied.'" *Board of Supervisors for Louisiana State University v. Smack Apparel Company*, 550 F.3d 465, 488 (5th Cir. 2008) (quoting *Pebble Beach Company v. Tour 18 I Limited*, 155 F.3d 526, 545 (5th Cir. 1998), *cert. denied*, __ U.S. __, 129 S.Ct. 2759 (2009)).  The doctrine also allows the use of another's mark to "truthfully . . . identify another's goods or services in order to describe or compare its product to the markholder's product." *Pebble Beach*, 155 F.3d at 545.  The right of fair use is not unlimited, however.  "In order to avail oneself of the nominative fair use defense[,] 'the defendant (1) may only use so much of the mark as necessary to identify the product or service and (2) may not do anything that suggests affiliation, sponsorship, or endorsement by the

markholder.'" *Smack Apparel*, 550 F.3d at 489. In other words, the defendants' "use cannot be one that creates a likelihood of confusion as to source, sponsorship, affiliation, or approval." *Id.* at 488 (quoting *Pebble Beach*, 155 F.3d at 546).

Here, the defendants argue that they "were using only so much of the Mary Kay marks as was reasonably necessary" to identify their products. Motion at 5. However, Mary Kay presented evidence at trial sufficient to allow the jury to conclude that the defendants had suggested affiliation with or sponsorship by Mary Kay. The plaintiff entered into evidence multiple e-mails that were sent to the Webers which revealed customer confusion about touchofpinkcosmetics.com's affiliation with Mary Kay. Tr. at 567:1-3; 568:21-25; 569:1-11; 570:15-22; 572:12-24; 574:18-25; 575:1-16. In addition to this evidence of actual confusion, Mary Kay also introduced evidence that many of the product descriptions and skin care tips the Webers used on their website were identical to those Mary Kay uses. *Id.* at 142-52; 549-51. This evidence is sufficient to allow a reasonable juror to conclude that the defendants improperly suggested affiliation with or sponsorship by Mary Kay.

### D. There Was Sufficient Evidence to Support the Jury's Finding on Willfulness

Next, the defendants argue that the jury could not have reasonably concluded from the evidence presented at trial that the defendants acted willfully. Motion at 5. Mary Kay contends that the court should not consider this argument because the defendants failed to challenge the sufficiency of the evidence on the willfulness issue

under Rule 50(a) before the close of evidence. Response at 3. Even if true, the court need not consider this argument because it concludes that the plaintiff presented evidence at trial on which the jury could have reasonably concluded that the defendants acted willfully.

The Fifth Circuit has not expressly defined willfulness in the context of trademark infringement. However, in *Quick Technologies, Inc. v. Sage Group, PLC*, 313 F.3d 338, 347-350 (5th Cir. 2002), *cert. denied*, 540 U.S. 814 (2003), the court affirmed the lower court's judgment awarding an accounting of profits based on the jury's finding that the defendants had acted willfully. The lower court's jury charge defined "willfully" in the context of willful infringement to mean "to do an act voluntarily and intentionally and with the specific intent to cause the likelihood of consumer confusion." *Quick Technologies*, 313 F.3d at 347 n.6. Thus, the court will use this definition.

Here, there was evidence which the jury could have interpreted as demonstrating willfulness. Amy Weber admitted on the stand that the inclusion of the word "pink" in the name of the defendants' website and eBay store might cause people to associate the sites with Mary Kay. *See* Tr. at 495:21-23 (conceding that "people can associate pink with Mary Kay"). Further, as discussed above, Mary Kay presented evidence that the defendants used product descriptions and product usage tips nearly identical to those on the Mary Kay site. *Id.* at 142-52. In addition, the

jury heard that the Webers described their eBay store as a " one stop shop for all your Mary Kay needs." Appendix in Support of Mary Kay Inc.'s Response to Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial and Brief in Support ("Appendix to Response") at App.006. The Webers' eBay store stated that "all products are new, in the box. We carry authentic products from former consultants and they have never been tested or used." *Id.* at App. 007.

Although the jury certainly did not have to interpret this evidence as demonstrating willfulness, it was not unreasonable for the jury to do so. The jury could have reasonably concluded that by using Mary Kay's product descriptions and tips, including the word "pink" in the name of their website and eBay store, and by including language touting the products as new and authentic, the Webers intended to deceive customers into thinking they were Mary Kay. The court will therefore not disturb the jury's finding on the issue of willfulness. The plaintiff presented sufficient evidence at trial on which the jury could have rested its verdict.

### E.  There Was Sufficient Evidence to Support the Jury's Award of an Accounting

Next, the defendants argue that the jury's award of an accounting is not supported by the evidence. Motion at 12. The Fifth Circuit has stated that in deciding whether to award an accounting of profits, there are several relevant factors: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales

have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Pebble Beach*, 155 F.3d at 554 (5th Cir. 1998). The court instructed the jury to take these factors into account when deciding whether to award an accounting of the profits. Court's Instructions to the Jury at 21-22. The jury took these factors into account and held that Mary Kay is entitled to an accounting of the profits. The court now holds that the plaintiff presented adequate evidence to support this finding.

The court has already held that the jury could have reasonably concluded that the Webers intended to confuse consumers about their affiliation with Mary Kay. There was thus sufficient evidence to support a finding that the first factor weighed in favor of an accounting. Regarding the second factor, the court concluded in its order ruling on the defendants' motion for summary judgment that the Webers' advertising had attracted significant attention. The court stated:

> According to [Amy Weber's] deposition, the Webers spend $20,000 each month on advertising. Appendix to Response at APP00407. Specifically, the Webers buy 79 keywords from Google in order to have their website appear in the results when an individual types any one of those 79 keywords into the search engine. *Id.* at APP00413-APP00414. Of these 79 keywords, 75 include the name Mary Kay or the name of a Mary Kay product. *Id.* at APP00414. More importantly, thirty two percent of individuals who search for one of these 79 keywords, click on the Webers' website. See *id.* at APP00408. These numbers suggest that the Webers have attracted a

> substantial amount of attention among individuals interested in Mary Kay products. This extensive infiltration into the world of Mary Kay consumers would allow a reasonable juror to conclude that the Webers' expired products are prevalent enough to affect the Mary Kay name.

Memorandum Opinion and Order at 21-22. Although the jury did not hear the thirty two percent figure, Mary Kay did present evidence that the defendants purchased keywords from Google and other search engines and spent approximately $20,000 a month on this type of advertising. Tr. at 502-513. From this fact, the jury could have reasonably concluded that the defendants' website diverted sales from the plaintiff.

The court also holds that it was not unreasonable for the jury to conclude that this was a case of palming off. Mary Kay's evidence that the defendants had used tips and product descriptions nearly identical to Mary Kay's, the language on the defendants' website, and the use of the word "pink" in the name of the website and eBay store was sufficient to allow the jury to conclude that the defendants intended to pass themselves off as Mary Kay. The jury could have reasonably concluded that the sixth factor weighed in favor of an accounting.

Finally, the jury could also have reasonably concluded that there was a public interest in making conduct such as the defendants' unprofitable. The jury heard evidence that some of the products sold by the defendants might have harmful effects if used past their expiration date. Tr. at 438-39. It would have been reasonable for

the jury to conclude that the public had an interest in keeping expired products out of the hands of consumers. It is true, as the defendants argued at trial, that Mary Kay itself has no control over what happens to its products once they are in the hands of IBCs. *Id.* at 449. As a result, it is possible, maybe even likely, that expired Mary Kay products find their way into consumers' hands even without websites such as the defendants'. Nonetheless, Mary Kay has demonstrated that it makes legitimate and nonpretextual efforts to control the flow of expired goods. *Id.* at 328-331. The jury could have reasonably concluded that these measures were effective, whereas the defendants intentionally sold predominately expired goods. *Id.* at 467 (Amy Weber testifying that approximately 70-75% of the goods sold on the defendants' website were expired). Such a conclusion could reasonably have led the jury to believe that it was important to punish the defendants' behavior and halt the stream of expired products into the hands of consumers. Thus, the jury could reasonably have decided that the fifth factor weighed in favor of an accounting of the profits.

Having decided that the jury could reasonably have concluded that at least four of the six factors weighed in favor of awarding an accounting of the profits, the court will not disturb the jury's finding on this issue.

### F. There Was Sufficient Evidence to Support a Finding of Liability Regarding the Defendants' eBay Account

The defendants next argue that "Mary Kay presented no evidence of confusion, or likelihood of confusion, arising from the existence of the Webers' eBay

store." Motion at 15. There was, however, some evidence presented that the Webers' eBay store caused a likelihood of consumer confusion regarding the Webers' affiliation with Mary Kay. The jury heard that the Webers' eBay store referred to itself as a "one stop shop for all your Mary Kay needs." Appendix to Response at App. 006. In addition, the Webers' eBay store stated that "all products are new, in the box. We carry authentic products from former consultants and they have never been tested or used." *Id.* at App. 007. Further, the name of the store was "Touch of Pink Cosmetics," identical to the name of the defendants' separate website. *Id.* Although Mary Kay did not present evidence that the tips and product descriptions used in the defendants' eBay store were identical to those used by Mary Kay, the jury could still have concluded that the Webers' use of the word "pink" in the name of the store, and their touting the products as new and authentic improperly implied affiliation with or sponsorship by Mary Kay. The plaintiff's evidence at trial undeniably focused more heavily on the defendants' website, touchofpinkcosmetics.com. Nonetheless, Mary Kay presented sufficient evidence regarding the eBay store to support the jury's finding of liability on this issue.

### G. The Motion for a New Trial

The defendants also move for a new trial. They argue that "[t]he jury's findings on Mary Kay's affirmative claims, including willfulness, and against the Webers on their affirmative defenses of laches, first sale doctrine and nominative fair

use doctrine were against the great weight of the evidence and justify a new trial." Motion at 15-16. The court disagrees. As discussed above, the jury's findings on the issue of willfulness, and the affirmative defenses of the first sale doctrine and nominative fair use doctrine were reasonable in light of the evidence presented at trial.

The defendants also spend a great deal of time contending that the jury's decision on the defense of laches was against the great weight of the evidence. This argument, however, is nothing more than a reassertion of the defendants' argument that they are entitled to judgment as a matter of law on the issue of laches. The court, in its memorandum opinion and order on the defendants' motion for summary judgment, has already addressed this issue. The defendants contend that Mary Kay found out about the Webers' websites three years before filing suit against them. The Webers argue this three year delay is unreasonably long. The court considered this argument when ruling on the defendants' motion for summary judgment and ruled that three years was not an inexcusable delay. Memorandum Opinion and Order at 36. The defendants cite no new evidence or case law that requires a different ruling now. The motion for new trial is therefore denied.

### III. CONCLUSION

For the reasons discussed above, the defendants' renewed motion for judgment as a matter of law or motion for new trial is **DENIED**.

SO ORDERED.

August 14, 2009.

                                                */s/ A. Joe Fish*
                                                A. JOE FISH
                                                **Senior United States District Judge**